UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT HARRISON KALK, | |
| Plaintiff, | Case No. 3:22-cv-00243 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| JONATHAN SKRMETTI et al., | |
| Defendants. | |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Pro se Plaintiff Robert Harrison Kalk brings this action under 42 U.S.C. § 1983 alleging violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution arising out of his arrest and detention in North Carolina based on a warrant issued in Davidson County, Tennessee. (Doc. No. 1.) Defendants Metropolitan Nashville and Davidson County Mayor John Cooper and Metropolitan Nashville Police Department (MNPD) Officer Robert Carrigan have filed a motion to dismiss Kalk's claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state any claims on which relief can be granted. (Doc. No. 6.) Cooper and Carrigan argue that Kalk's claims are barred by the doctrine of issue preclusion because Kalk filed a lawsuit based on identical facts against different defendants in the U.S. District Court for the Western District of North Carolina that was dismissed under Rule 12(b)(6).[1] (Doc. No. 7.) In the alternative, they argue that they are entitled to qualified

---

[1]     Cooper and Carrigan have attached records from that proceeding to their motion to dismiss. (Doc. Nos. 6-1–6-3.)

immunity from Kalk's claims. (*Id.*) Kalk has responded in opposition (Doc. No. 9), and Cooper and Carrigan have filed a reply (Doc. No. 10). Kalk also filed a surreply without the Court's permission. (Doc. No. 11.)

Defendant Tennessee Attorney General Jonathan Skrmetti—who has been automatically substituted as a defendant in this case for former Tennessee Attorney General Herbert Slatery, III, under Federal Rule of Civil Procedure 25(d), *see* Fed. R. Civ. P. 25(d); (Doc. No. 22)—has moved to dismiss Kalk's official-capacity claims against him under Rule 12(b)(1) for lack of jurisdiction and, in the alternative, under Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. No. 18.) Kalk has responded in opposition to Skrmetti's motion to dismiss. (Doc. No. 23.) Skrmetti did not file an optional reply.

For the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motions to dismiss.

## I. Background

### A. Factual Background[2]

Kalk lives in North Carolina and has fifty years of experience in child advocacy and youth ministry. (Doc. No. 1.) He frequently publishes online articles and podcasts regarding his religious,

---

[2] The facts in this section are drawn from Kalk's complaint in this action. (Doc. No. 1.) The Court takes judicial notice that almost all the same facts appear in a complaint Kalk filed in the U.S. District Court for the Western District of North Carolina. Complaint for Violation of Civil Rights, *Kalk v. Miller*, No. 1:22-cv-00019 (W.D.N.C. Feb. 2, 2022), ECF No. 1; *see also Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457 (6th Cir. 2022) (holding that courts "may take judicial notice of other court proceedings without converting [a] motion [to dismiss under Rule 12(b)(6)] into one for summary judgment" (quoting *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010))); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (holding that, "if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment").

political, and social views. (*Id.*) On March 20, 2021, Kalk visited and purchased recording time at Nash Vox recording studio in Nashville, Tennessee. (*Id.*) In April 2021, Kalk published a podcast episode that "was critical of a cop culture that is largely derived from that of the area's slave patrols." (*Id.* at PageID# 5.) In July 2021, two Buncombe County, North Carolina detectives visited Kalk and told him that a Nash Vox employee found a thumb drive containing explicit photos of minors in the recording studio's reception area. (Doc. No. 1.) The detectives posited that the thumb drive and photos belonged to Kalk, which Kalk denied. (*Id.*) The detectives told Kalk "that both of his children had been contacted concerning" the thumb drive and photos. (*Id.* at PageID# 5.) "His son was told the thumb drive belonged to [Kalk]" and "[h]is daughter was asked to provide photos of [Kalk's] grandchildren" to determine if they were the children depicted in the thumb-drive photos. (*Id.*) One of the detectives "repeatedly asked [Kalk] about one of his podcasts[,]" which Kalk later realized was the podcast series containing the April 2021 episode critical of cop culture. (*Id.* at PageID# 5.) The detectives also gave Kalk "a name and phone number for . . . Carrigan, the principal investigator in Tennessee."[3] (*Id.* at PageID# 6, 9.) Kalk called Carrigan, introduced himself, shared his contact information, "and then told [Carrigan] that because of the seriousness of the allegations, [Kalk] would consult an attorney before engaging in any dialog[ue]." (*Id.* at PageID# 6, 9.)

Sometime that winter, Kalk "was seized at his home by . . . three Buncombe County, North Carolina Deputies . . . ." (*Id.* at PageID# 5.) Kalk alleges that the deputies were "acting in good faith, upon an [e]xtradition [w]arrant secured in bad faith." (*Id.*) Specifically, Kalk states that "[a] false [a]ffidavit had been filed by Officer Long of the Davidson County Tennessee Police for the

---

[3]      The complaint Kalk filed in the North Carolina action did not mention Carrigan.

purpose of obtaining an [e]xtradition [o]rder[,]" and that the affidavit included the false "claim that [Kalk] had fled from justice" in Tennessee. (*Id.* at PageID# 8.)

Following his arrest, Kalk was held "for five days and nights" "in a refrigerated tank" without "insulating clothing" "and was required to sit, lay, and sleep on heat-sinking concrete benches and floors without either a pillow or blanket." (*Id.* at PageID# 6.) Kalk "was also denied diabetic meals and medication causing a blood sugar spike that exacerbated the peripheral neuropathy he was experiencing prior to incarceration and resulting in . . . diabetic nerve pain." (*Id.*) Kalk states that he "sustained injuries to his shoulder, his hips, his knees, and his feet . . . during his incarceration." (*Id.*)

### B.  Procedural History

#### 1.  Western District of North Carolina Action

On February 2, 2022, Kalk filed a complaint under 42 U.S.C. § 1983 in the U.S. District Court for the Western District of North Carolina against the Buncombe County Sheriff's Department, Sheriff Quinten Miller, and Captain Jeffrey Littrell (the North Carolina Defendants). Complaint for Violation of Civil Rights, *Kalk v. Miller*, No. 1:22-cv-00019 (W.D.N.C. Feb. 2, 2022), ECF No. 1. Kalk alleged substantially the same facts that he has alleged in this action regarding his arrest and detention in North Carolina and asserted violations of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.* Specifically, Kalk alleged that he was arrested in violation of the Fourth Amendment's prohibition on unreasonable searches and seizures because the extradition warrant prompting his arrest was based on a falsified affidavit; that his Fifth Amendment right to due process was violated because "Tennessee conducted no substantive due process[,]" "[t]here was no presumption of innocence[,] [a]nd no notice was given to [him] prior to his arrest and [detention] . . ."; that he "was deprived of the [Sixth Amendment] right to have [c]ounsel present at questioning prior to any charges being filed" and "deprived of

4

[the] ability to communicate with [c]ourt appointed [c]ounsel for four days and nights . . ."; that the conditions of his confinement violated the Eighth Amendment's prohibition on cruel and unusual punishment; and that his right to due process under the Fourteenth Amendment was violated because Tennessee "failed to provide even the most basic notification before filing for [e]xtradition" and North Carolina continued to hold him for "four days and nights" after the false affidavit "was brought to the attention of the North Carolina [c]ourt[.]" *Id.* at 4, 5. Kalk sought monetary damages and an apology letter. *Id.* at 6.

The North Carolina Defendants filed a motion to dismiss Kalk's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief could be granted. Motion to Dismiss, *Kalk v. Miller*, No. 1:22-cv-00019 (W.D.N.C. Apr. 1, 2022), ECF No. 4. The court granted the motion and dismissed Kalk's complaint in its entirety. *Kalk v. Miller*, No. 1:22-cv-19, 2022 WL 1445229, at *4 (W.D.N.C. May 6, 2022), *aff'd* No. 22-1611, 2022 WL 16948597 (4th Cir. Nov. 15, 2022). Specifically, the court found that Kalk had failed to state claims against Miller and Littrell in their official capacities because he "failed to make any allegation that a Sheriff's Office policy, custom, or practice caused his alleged constitutional deprivations." *Id.* at *3. The court found that Kalk failed to state any claims against Miller and Littrell in their individual capacities because he "failed to attribute any of the alleged constitutional violations to conduct performed by either [ ] Miller or Littrell" and did not "plausibly allege[ ] facts sufficient to state a claim based on supervisory liability." *Id.* The court also found that the Buncombe County Sheriff's Department was "not an entity capable of suit" under § 1983. *Id.* Kalk appealed the dismissal, and the U.S. Court of Appeals for the Fourth Circuit affirmed the district court's decision. *Kalk v. Miller*, No. 22-1611, 2022 WL 16948597 (4th Cir. Nov. 15, 2022).

## 2.     Middle District of Tennessee Action

### a.     Kalk's Complaint

Kalk initiated this action on April 6, 2022, by filing a complaint under 42 U.S.C. § 1983 alleging constitutional claims against Cooper, Carrigan, former Attorney General Slatery, and Defendant Glenn Funk, District Attorney General for the 20th Judicial District (Metro Nashville and Davidson, County, Tennessee).[4] (Doc. No. 1.) Kalk's complaint largely repeats the facts from the North Carolina action and alleges similar Fourth, Fifth, Sixth, and Fourteenth Amendment claims against Cooper, Carrigan, Slatery, and Funk. (*Id.*) Specifically, Kalk alleges that his arrest in North Carolina violated the Fourth Amendment because it was based on a falsified affidavit and extradition warrant; that he was deprived of his Fifth Amendment right to due process because "[n]o notice was given to [him] prior to his arrest and subjecting him to punitive measures"; that he was deprived of his Sixth Amendment right to counsel because he did not "have [c]ounsel present at questioning prior to any charges being filed"; and that his Fourteenth Amendment right to due process was violated because Tennessee "failed to provide even the most basic notification before filing for [e]xtradition[.]" (*Id.* at PageID# 5, 6.) Kalk checked boxes on his complaint indicating that he brings claims against each defendant in their official and individual capacities. (Doc. No. 1.) Kalk seeks monetary damages, "correction of the public record[,]" and apology letters from each defendant to Kalk's children. (*Id.* at PageID# 7.)

Kalk attached copies of two letters to his complaint, one addressed to Cooper and the other addressed to Funk. (Doc. No. 1.) The letter to Cooper is dated August 10, 2021. (*Id.*) It announces

---

[4]     On Kalk's motion, the Court twice extended the deadline for Kalk to effect service of process on Funk. (Doc. No. 25.) Funk recently appeared and filed a motion to dismiss Kalk's complaint under Rule 12(b)(6). (Doc. No. 27.) The Magistrate Judge will address Funk's motion by separate report and recommendation when the motion is fully briefed.

Kalk's intent to file a lawsuit "against the City of Nashville" and Nash Vox, describes Kalk's trip to the recording studio and subsequent visit from the North Carolina detectives, states that MNPD officers contacted Kalk's children and advanced a "BS narrative . . . [,]" and asks Cooper to "begin to mitigate [Kalk's] damages by issuing an apology to the parents of [Kalk's] grandchildren without further delay." (*Id.* at PageID# 13, 14.) The letter to Funk is dated February 9, 2022. (Doc. No. 1.) It states Kalk's intention to file a lawsuit "against two Nashville Police officers, the City of Nashville, and Davidson County[,] Tennessee[;]" describes the extradition warrant, Kalk's arrest, and Kalk's phone call to Carrigan; asserts that Kalk's constitutional rights were violated; and asks Funk "to mitigate damages in this matter" by "withdraw[ing] the [p]etition for [e]xtradition together with the [c]riminal [c]omplaint" and "provid[ing] an apology to [Kalk's] children." (*Id.* at PageID# 8, 12.) The letter to Funk was also copied to Slatery. (Doc. No. 1.)

### b. Cooper and Carrigan's Motion to Dismiss

Cooper and Carrigan filed a motion to dismiss Kalk's claims against them under Rule 12(b)(6) for failure to state claims on which relief can be granted. (Doc. No. 6.) Cooper and Carrigan argue that the doctrine of issue preclusion bars Kalk's official-capacity and individual-capacity claims against them because those claims are based on the same facts underlying the North Carolina action, that the North Carolina action provided Kalk with a full and fair opportunity to litigate any claims arising out of those facts, and that the Western District of North Carolina reached a final decision on the merits in that action. (Doc. No. 7.) In the alternative, Cooper and Carrigan argue that they are entitled to qualified immunity because Kalk has not identified any municipal policies that were the moving force behind violations of his constitutional rights and has not plausibly alleged that Cooper and Carrigan violated his constitutional rights. (*Id.*)

Kalk responds that issue preclusion does not apply to his claims because he appealed the district court's order dismissing the North Carolina action and "the issues raised in [the] North

Carolina [action] are entirely different from those raised" here. (Doc. No. 9, PageID# 70, ¶ 2.) Kalk further argues that he has adequately alleged the existence of a municipal policy that caused his injuries and has adequately alleged that Cooper and Carrigan violated his constitutional rights. (Doc. No. 9.) Cooper and Carrigan argue in reply that issue preclusion applies because Kalk's "claims in both lawsuits are focused solely on alleged constitutional violations stemming from his arrest in North Carolina" and that Kalk's appeal of the district court's order is not relevant to the issue preclusion analysis. (Doc. No. 10, PageID# 77.) They also reiterate their arguments that they are entitled to qualified immunity. (Doc. No. 10.) Kalk filed a surreply, without the Court's permission, reiterating his arguments against Cooper and Carrigan's motion. (Doc. No. 11.)

### c. Skrmetti's Motion to Dismiss

Acting in his official capacity as Tennessee Attorney General, Skrmetti filed a motion to dismiss Kalk's claims under Rule 12(b)(1) or, in the alternative, Rule 12(b)(6). (Doc. No. 18.) Skrmetti argues that Kalk's complaint only alleges official-capacity claims against former Attorney General Slatery and that the Attorney General is entitled to Eleventh Amendment sovereign immunity. (Doc. No. 19.) In the alternative, Skrmetti argues that Kalk's claims should be dismissed under Rule 12(b)(6) for failure to state any plausible claims for relief. (*Id.*) Kalk responds that allowing Skrmetti to invoke sovereign immunity is "antithetical to 'Equal Justice Under Law[ ]'" and argues that he should be allowed to conduct discovery to gather further evidence to support his claims. (Doc. No. 23, PageID# 124, 125.) Skrmetti did not file an optional reply.

## II.  Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded

factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), a court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016) (quoting *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. updated Apr. 2022) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or

integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment.").

Because Kalk appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### B.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[5] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle

---

[5]    For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). "A state's assertion of sovereign immunity constitutes a factual attack." *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 564 (M.D. Tenn. 2011). In resolving assertions of sovereign immunity, no presumption of truth applies to the plaintiff's factual allegations, and the "court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). District courts reviewing factual attacks on jurisdiction have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

III.     **Analysis**

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). To overcome a Rule 12(b)(6) motion to dismiss an individual-capacity claim under § 1983, "the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz* 592 F.3d at 722. Official-capacity claims may be treated as municipal liability claims against the entity for which the defendant is an officer or agent.

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("An official-capacity claim against a person is essentially a claim against the municipality."). "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. The overarching question in resolving such claims is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Accordingly, for an official-capacity claim "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014).

### A. Cooper and Carrigan's Motion to Dismiss

#### 1. Issue Preclusion

Cooper and Carrigan argue that the doctrine of issue preclusion bars all of Kalk's claims against them. (Doc. No. 7.) "Issue preclusion . . . 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)). Four requirements must be met for issue preclusion to apply:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* (emphasis omitted) (quoting *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589–90 (6th Cir. 2009)). Where, as here, defendants invoke issue preclusion, "[m]utuality between the parties is not required . . . so long as 'the plaintiff has had a full and fair opportunity to litigate the contested issue previously.'" *Id.* at 1098–99 (quoting *McAdoo v. Dallas Corp.*, 932 F.2d 522, 523 (6th Cir. 1991)).

Cooper and Carrigan argue that issue preclusion applies here because Kalk alleged the same facts in his prior lawsuit, "had a full and fair opportunity . . . to litigate the issues arising out of the same facts [in that lawsuit] . . . , and [ ] the [ ] court reached a final decision on the merits of that case when it granted the Rule 12(b)(6) motion[.]" (Doc. No. 7, PageID# 63.) Cooper and Carrigan argue that the Western District of North Carolina's order dismissing that action shows "that the issues in the two cases are the same" because the order recognizes that Kalk previously asserted a Fourth Amendment claim based on an extradition warrant secured in bad faith, a Fifth Amendment claim based on Tennessee's alleged failure to provide Kalk with adequate notice and due process, and a Sixth Amendment claim based on the fact that Kalk did not have counsel present at questioning before charges were filed against him. (Doc. No. 10, PageID# 77 n.3.)

But Cooper and Carrigan have not shown that any of these facts or legal claims were actually litigated in the prior action and that their determination was necessary to the outcome of that action. *See, e.g.*, *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 675, 676 (6th Cir. 2008) (declining to apply issue preclusion where, among other things, litigants invoking doctrine failed to "identify the 'precise issue' decided by the [prior] court" and show that the prior "court's relevant fact findings—whatever they were—were 'necessary' to its judgment"). To the contrary,

the Western District of North Carolina dismissed Kalk's complaint based on its findings that Kalk "failed to make any allegation that a [Buncombe County] Sheriff's Office policy, custom, or practice caused his alleged constitutional deprivations[,]" did "not include any factual allegations against Defendant[s] Miller and Littrell in the [c]omplaint[,]" did not "plausibly allege[ ] facts sufficient to state a claim based on supervisory liability" against Miller and Littrell, and that, as a matter of law, "[a] sheriff's department in North Carolina is not an entity capable of suit." *Kalk*, 2022 WL 1445229, at *3. There is no indication in the court's order that it made any findings regarding the extradition warrant, the level of notice or due process provided to Kalk, or Kalk's access to counsel, and there is no indication that such findings were necessary to the court's decision to grant the motion to dismiss. Cooper and Carrigan therefore have not made the four-part showing necessary for this Court to apply issue preclusion to bar Kalk's claims against them in this action. *See Ga.-Pac. Consumer Prods. LP*, 701 F.3d at 1098.

## 2. Qualified Immunity

Cooper and Carrigan argue, in the alternative, that Kalk's § 1983 claims against them should be dismissed under Rule 12(b)(6) because they are entitled to qualified immunity. (Doc. No. 7.) "The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). The doctrine "'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cnty.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Because the qualified immunity analysis is fact-intensive and the precise factual basis for a plaintiff's claims may be hard to identify at the pleading stage, courts typically resolve qualified immunity defenses after discovery in the context of a motion for

summary judgment. *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 907 (6th Cir. 2019) ("[A]lthough an offic[ial]'s entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (first alteration in original) (quoting *Osberry v. Slusher*, 750 F. App'x 385, 391 (6th Cir. 2018))); *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (holding "that it is 'generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity'" because "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify" (alteration in original) (citations omitted)).

To survive a motion to dismiss on qualified immunity grounds, a "plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable offic[ial] would have known that his conduct violated that right.'" *Cahoo*, 912 F.3d at 898 (first alteration in original) (quoting *Courtright*, 839 F.3d at 518). The test is whether, reading the complaint in the light most favorable to Kalk, it is plausible that Cooper's and Carrigan's behavior violated Kalk's clearly established constitutional rights. *See id.* This test can be broken into two inquiries. "'First, taken in the light most favorable to [Kalk], do the facts alleged show that [each] [defendant's] conduct violated a constitutional right?'" *Id.* at 897 (quoting *Seales v. City of Detroit*, 724 F. App'x 356, 359 (6th Cir. 2018)); *see also Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant."). "'Second, is the right clearly established?'" *Cahoo*, 912 F.3d at 897 (quoting *Seales*, 724 F. App'x at 359).

### a. Kalk's Official-Capacity Claims Against Cooper And Carrigan

Cooper and Carrigan argue that Kalk has failed to allege sufficient facts to support his official-capacity claims against them because he has "not identif[ied] *any* Metro policy or custom that caused the alleged violations of his rights." (Doc. No. 7, PageID# 65.) At trial or at summary judgment, a plaintiff may prove the existence of a municipal custom or policy in one of four ways:

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas*, 398 F.3d at 429. At the motion to dismiss stage, however, a plaintiff need only plead sufficient factual content to allow the court to draw the reasonable inference that a municipal custom or policy caused the alleged violations. *Warren v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:14-CV-2373, 2015 WL 3417844, at *6 (M.D. Tenn. May 27, 2015); *Naselroad v. Mabry*, Civ. Action No. 5:14-389, 2015 WL 1412007, at *5 (E.D. Ky. Mar. 26, 2015); *see also* 6 James Buchwalter et al., *Federal Procedure* § 11:326 (Lawyers ed. updated Nov. 2022) ("A plaintiff need not specifically plead or identify an unconstitutional policy on the part of a municipality to survive a motion to dismiss a municipal liability claim under § 1983; at the very least, however, a plaintiff must allege facts which would support the existence of an unconstitutional policy or custom.").

Kalk alleges in his complaint that "[t]he government of Tennessee has a long history of racist policing and a persistent problem with selective prosecution." (Doc. No. 1, PageID# 3.) He alleges that there was a "pattern of police misconduct" in this case that "included publishing politically popular allegations that are easy to make, using evidence that is easy to fabricate, and involving complex systems that are easy to hack." (*Id.*) Kalk also alleges that "there is nothing in an official's oath of office, their department charter, or the state and federal constitutions that gives

officers a license to be punitive" and that the defendants "nonetheless engaged in behaviors that were motivated and designed to inflict damages upon [Kalk]." (*Id.*) These general and conclusory allegations lack a factual underpinning and, even construed in the light most favorable to Kalk, do not support a reasonable inference that a municipal policy or custom caused violations of Kalk's constitutional rights. *See Iqbal*, 556 U.S. at 678; *Spainhoward v. White Cnty.*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019) (finding that plaintiff's policy allegations were "boilerplate and conclusory and contain[ed] insufficient factual assertions" to satisfy "the *Iqbal/Twombly* pleading standards"); *see also Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, Civ. No. 3:10-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010) (granting 12(b)(6) motion to dismiss municipal liability claims where complaint "lack[ed] any supporting facts" regarding alleged municipal policies). Cooper and Carrigan are therefore entitled to qualified immunity from Kalk's official-capacity claims and their motion to dismiss should be granted with respect to these claims. *See Cahoo*, 912 F.3d at 897–98.

### b. Kalk's Individual-Capacity Claims Against Cooper and Carrigan

Cooper and Carrigan argue that they are entitled to qualified immunity from Kalk's individual-capacity claims against them because Kalk has not sufficiently alleged that either defendant "personally caused any of the alleged violations of his rights." (Doc. No. 7, PageID# 66.) Kalk responds that his complaint "clearly refers to the falsified affidavit while also advancing the allegation that [the MNPD] . . . ha[s] a long history of abusive conduct[,]" and that he "quickly became their favorite suspect, despite all the foot traffic within the studio, when it was discovered [Kalk's] digital publishing activities included criticism of those police departments that have failed to evolve beyond the culture of the slave patrols." (Doc. No. 9, PageID# 70, ¶ 4.)

### i.      Cooper

In the August 2021 letter to Cooper—which Kalk attached to his complaint—Kalk informed Cooper that the MNPD had "advanced" a "BS narrative" that the thumb drive and images found at Nash Vox Recording Studio belonged to Kalk, threatened to sue the City of Nashville and Nash Vox, and asked Cooper to "begin to mitigate damages by issuing an apology to the parents of [Kalk's] grandchildren . . . ." (Doc. No. 1, PageID# 13, 14.) After his arrest, Kalk sent a letter to Funk—also attached to the complaint—further stating that "Mayor Cooper had a duty and adequate opportunity to mitigate damages in this case." (*Id.* at PageID# 9.) Kalk's complaint alleges that:

> The officer's unprofessional behavior was brought to the attention of senior officials within the city, county, and state governments to inform them of their duty and afford them the opportunity to mitigate damages from the retaliatory behaviors of unprincipled officers. Mayor John Cooper, Attorney General Herbert Slatery, and District Attorney Glen Funk <u>failed in their duty</u> to protect the civil rights of the Plaintiff while also eroding the constitutional rights of all their constituents.

(*Id.* at PageID# 4.) The Court construes these allegations as a claim that Kalk notified Cooper of the MNPD's investigation of him and that Cooper failed to apologize or intervene to prevent Kalk's arrest and prosecution.

"[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)), *cert. denied*, 530 U.S. 1264 (2000)). Further, "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional

conduct of the offending subordinate." *Id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Kalk has not plausibly alleged that Cooper "directly participated, encouraged, authorized, or acquiesced in the claimed retaliatory acts against" him. *Shehee*, 199 F.3d at 300. He therefore has not plausibly alleged that Cooper violated his constitutional rights, and Cooper is entitled to qualified immunity from Kalk's individual-capacity claims.

### ii. Carrigan

Kalk's complaint alleges that Carrigan was "the principal investigator in Tennessee" and that Carrigan

> built a wildly circumstantial case without regard to [Kalk's] course or range of business activities including the maintenance of 136 Internet domain names, the management of 22 web sites, publishing po[d]casts and web logs, driving for Uber and Lyft, salvaging drives, swapping drives, and performing backups from repairs and upgrades for a variety of customers.[6]

(Doc No. 1, PageID# 5, 6.) The allegation that Carrigan built a "wildly circumstantial" case against Kalk is conclusory and insufficient to support a reasonable inference that Carrigan violated Kalk's constitutional rights. *See Iqbal*, 556 U.S. at 678; *see also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) ("We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice [to survive a motion to dismiss]." (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009))). Kalk has not plausibly alleged that Carrigan violated his constitutional rights, and Carrigan is entitled to qualified immunity from Kalk's individual-capacity claims.

---

[6]    Kalk alleges that it was MNPD Officer Long, not Carrigan, who filed "[a] false [a]ffidavit . . . for the purpose of obtaining an [e]xtradition [o]rder" for Kalk. (Doc. No. 1, PageID# 8.)

### B. Skrmetti's Motion to Dismiss

Kalk's complaint purports to bring both official-capacity and individual-capacity claims against former Tennessee Attorney General Slatery, but the only factual allegations in Kalk's complaint about Slatery's conduct are related to his official duties. (Doc. No. 1.) Specifically, Kalk alleges that:

> The officer's unprofessional behavior was brought to the attention of senior officials within the city, county, and state governments to inform them of their duty and afford them the opportunity to mitigate damages from the retaliatory behaviors of unprincipled officers. Mayor John Cooper, Attorney General Herbert Slatery, and District Attorney Glen Funk <u>failed in their duty</u> to protect the civil rights of the Plaintiff while also eroding the constitutional rights of all their constituents.

(*Id.* at PageID# 4.) The Court construes this allegation as referring to Kalk's letter to Funk, on which he copied Slatery. (Doc. No. 1.) Because Kalk alleges no actions taken by Slatery in his individual capacity, the Court considers Kalk's claims to be against Slatery in his official capacity for which Skrmetti has been substituted as the defendant.[7]

Skrmetti argues that Eleventh Amendment sovereign immunity bars Kalk's official-capacity claims against him. (Doc. No. 19.) The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The immunity also applies to actions against state officials sued in their official capacity for money damages." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)).

---

[7]    Kalk did not object when the Court substituted Skrmetti as a defendant to Kalk's official-capacity claims against Slatery and terminated Slatery as a defendant in this action. (Doc. No. 22.)

"There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908)[,] applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None of these exceptions applies to Kalk's official-capacity claims against Skrmetti.

The Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in state and federal courts unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (citing Tenn. Code Ann. § 20-13-102(a)); *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991) (quoting Tenn. Code Ann. § 20-13-102(a)). Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. The first exception therefore does not apply.

The *Ex parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (quoting *S & M Brands, Inc.*, 527 F.3d at 507). Kalk's complaint does not seek injunctive relief against Skrmetti. The second exception therefore does not apply.

"Section 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. The Supreme Court has held that Congress did not abrogate states' immunity to suits brought under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see*

*also Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). This exception does not apply, and sovereign immunity therefore bars Kalk's claims against Skrmetti.[8]

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Cooper and Carrigan's motion to dismiss (Doc. No. 6) be GRANTED, that Kalk's claims against Cooper and Carrigan be DISMISSED, that Skrmetti's motion to dismiss (Doc. No. 18) be GRANTED, and that Kalk's claims against Skrmetti be DISMISSED WITHOUT PREJUDICE.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 24th day of January, 2023.

ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[8]     Because Kalk's official-capacity claims against Skrmetti are subject to dismissal under Rule 12(b)(1), the Court need not address Skrmetti's alternative argument that Kalk's claims are also subject to dismissal under Rule 12(b)(6). *See, e.g.*, *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, Civ. No. 3:09-0412, 2009 WL 2823613, at *3 (M.D. Tenn. Aug. 28, 2009) (finding that "it is not necessary to reach [ ] 12(b)(6) arguments" where "jurisdictional issues are dispositive").