UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT HARRISON KALK,<br><br>    Plaintiff,<br><br>v.<br><br>JONATHAN SKRMETTI et al.,<br><br>    Defendants. | Case No. 3:22-cv-00243<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### REPORT AND RECOMMENDATION

Defendant Glenn Funk, District Attorney General for the 20th Judicial District (Metro Nashville and Davidson, County, Tennessee), has moved to dismiss pro se Plaintiff Robert Harrison Kalk's claims against him in this civil rights action brought under 42 U.S.C. § 1983. (Doc. No. 27.) Kalk has responded in opposition. (Doc. No. 32.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant Funk's motion to dismiss.

**I.    Relevant Background**

The Court described the underlying facts and procedural history of this action at length in a prior report and recommendation. (Doc. No. 31.) This Report and Recommendation briefly summarizes the facts underlying Kalk's claims against Funk and the procedural history relevant to the claims.

    **A.    Factual Background**

Kalk's claims against Funk arise out of Kalk's arrest and detention in North Carolina based on a warrant issued in Davidson County, Tennessee. (Doc. No. 1.) Kalk lives in North Carolina, works in child advocacy and youth ministry, and frequently publishes online articles and podcasts

regarding his religious, political, and social views. (*Id.*) Kalk visited and purchased recording time at Nash Vox recording studio in Nashville, Tennessee, on March 20, 2021. (*Id.*) In July 2021, two Buncombe County, North Carolina detectives visited Kalk, told him that a Nash Vox employee found a thumb drive containing explicit photos of minors in the recording studio's reception area, and suggested that the photos belonged to Kalk, an accusation that Kalk denied. (*Id.*) The detectives told Kalk that both of his children had already been contacted about the thumb drive and photos. (*Id.*) His son was told the thumb drive belonged to Kalk and his daughter was asked to provide photos of Kalk's grandchildren to determine if they were the children depicted in the thumb-drive photos. (*Id.*)

Sometime that winter, three Buncombe County deputies arrested Kalk at his home. (*Id.*) Kalk alleges that the deputies were "acting in good faith, upon an [e]xtradition [w]arrant secured in bad faith." (*Id.* at PageID# 5.) Specifically, Kalk states that "[a] false [a]ffidavit had been filed by Officer Long of the Davidson County Tennessee Police for the purpose of obtaining an [e]xtradition [o]rder[,]" and that the affidavit included the false "claim that [Kalk] had fled from justice" in Tennessee. (*Id.* at PageID# 8.) Kalk asserts that "[a]t no time prior to the seizure did [he] receive any written notice or subpoena to appear personally for any Tennessee legal proceeding such as an interrogation, deposition, or hearing." (*Id.* at PageID# 6.) Kalk states that Funk "condoned" the use of a falsified affidavit to obtain the extradition warrant. (*Id.* at PageID# 4.) He further states that Funk "<u>failed in [his] duty</u> to protect [Kalk's] civil rights . . . while also eroding the constitutional rights of all [his] constituents." (*Id.*)

Kalk sent Funk a letter regarding his arrest dated February 9, 2022. (Doc. No. 1.) The letter states Kalk's intention to file a lawsuit "against two Nashville Police officers, the City of Nashville, and Davidson County[,] Tennessee[;]" describes the extradition warrant and Kalk's arrest; asserts

that Kalk's constitutional rights were violated; and asks Funk "to mitigate damages in this matter" by "withdraw[ing] the [p]etition for [e]xtradition together with the [c]riminal [c]omplaint" and "provid[ing] an apology to [Kalk's] children." (*Id.* at PageID# 8, 12.)

B.  **Procedural History**

Kalk initiated this action on April 6, 2022, by filing a complaint under 42 U.S.C. § 1983 alleging constitutional claims against Funk and several other defendants. (Doc. No. 1.) Kalk alleges that his arrest in North Carolina violated the Fourth Amendment because it was based on a falsified affidavit and extradition warrant; that he was deprived of his Fifth Amendment right to due process because "[n]o notice was given to [him] prior to his arrest and subjecting him to punitive measures"; that he was deprived of his Sixth Amendment right to counsel because he did not "have [c]ounsel present at questioning prior to any charges being filed"; and that his Fourteenth Amendment right to due process was violated because Tennessee "failed to provide even the most basic notification before filing for [e]xtradition[.]" (*Id.* at PageID# 5, 6.) Kalk checked boxes on his complaint indicating that he brings claims against Funk in Funk's official and individual capacities. (Doc. No. 1.) He seeks monetary damages, "correction of the public record[,]" and apology letters to his children. (*Id.* at PageID# 7.)

The other defendants moved to dismiss Kalk's claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief can be granted and under Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc. Nos. 6, 18.) The Court granted the defendants' motions and dismissed those claims. (Doc. Nos. 31, 34.) The only remaining claims in this action are Kalk's claims against Funk.

Funk has now filed a motion to dismiss Kalk's claims against him under Rules 12(b)(1) and 12(b)(6). (Doc. No. 27.) Funk argues that he is entitled to Eleventh Amendment sovereign immunity from Kalk's official-capacity claims and that Kalk has failed to state any plausible

3

individual-capacity claims for relief against Funk. (Doc. No. 28.) In the alternative, Funk argues that he is entitled to prosecutorial immunity from Kalk's individual-capacity claims. (*Id.*)

Kalk responds that the immunities Funk asserts "have no foundation in the United States Constitution" and "are instead derived from the delusional notions of infallibility held by popes and kings." (Doc. No. 32, PageID# 178.) He argues that "[t]o allow the wildly circumstantial 'conclusory statements' in Funk's program of taxpayer funded gossip mongering" but "disallow conclusory statements about a government operation that is impermissibly opaque in the context of a constitutionally guaranteed right to a redress of grievances, is not only incoherent policy, it is antithetical to the administration of justice." (*Id.* at PageID# 179.) Kalk further argues that "[a] proper constitutional analysis cannot be performed in the absence of evidence establishing [his] justification(s) for brining suit" and that "it is impossible for this Court, without any factual development whatsoever, to determine whether [Funk's] [m]otion should therefore be granted." (*Id.* at PageID# 182.)

Funk did not file an optional reply in support of his motion to dismiss.

**II.     Legal Standards**

   **A.     Federal Rule of Civil Procedure 12(b)(1)**

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[1] U.S. Const. art. III, § 2,

---

[1]     For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

4

Case 3:22-cv-00243   Document 35   Filed 07/02/23   Page 4 of 11 PageID #: 193

cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Kalk appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an

argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz* 592 F.3d at 722.

#### A. Official-Capacity Claims Against Funk

Funk argues that the Court should dismiss Kalk's official-capacity claims against him under Rule 12(b)(1) because he is entitled to Eleventh Amendment sovereign immunity from these claims. (Doc. No. 28.) The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The immunity also applies to actions against state officials sued in their official capacity for money damages." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This Court has repeatedly found that district attorneys general are entitled to sovereign immunity because they are state employees paid by the State of Tennessee. *Lambert v. Davidson Cnty. Dist. Att'y*, No. 3:19-cv-00893, 2020 WL 7624005, at *3 (M.D. Tenn. Dec. 22, 2020);

*Hemenway v. 16th Jud. Dist. Att'y's Off.*, No. 3:15-cv-00997, 2020 WL 6364486, at *4 (M.D. Tenn. Oct. 29, 2020). Kalk's § 1983 claims against Funk in his official capacity "are, in effect, claims against the State of Tennessee[.]" *Lambert*, 2020 WL 7624005, at *3; *see also White ex rel. Swafford v. Gerbitz*, 860 F.2d 661, 663 n.2 (6th Cir. 1988) (holding that suits against district attorneys in their official capacities are effectively suits against the state).

"There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908)[,] applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None of these exceptions applies to Kalk's official-capacity claims against Funk.

The Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in state and federal courts unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (citing Tenn. Code Ann. § 20-13-102(a)); *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991) (quoting Tenn. Code Ann. § 20-13-102(a)). Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. The first exception therefore does not apply.

The *Ex parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (quoting *S & M Brands, Inc.*, 527 F.3d at 507). Kalk's complaint does not seek injunctive relief against Funk. The second exception therefore does not apply.

"Section 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. The Supreme Court has held that Congress did not abrogate states' immunity to suits brought under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). This exception does not apply, and sovereign immunity therefore bars Kalk's official-capacity claims against Funk.

### B. Individual-Capacity Claims Against Funk

Funk argues that the Court should dismiss Kalk's individual-capacity claims against him under Rule 12(b)(6) for failure to state a claim because the complaint "lodges a heap of vague, conclusory allegations without any plain statement of [Funk's] involvement." (Doc. No. 28, PageID# 145.) Funk argues in the alternative that the doctrine of prosecutorial immunity shields him from Kalk's individual-capacity claims. (Doc. No. 28.)

Kalk alleges that "the District and State Attorneys" "condoned" the use of a "falsified [ ] affidavit" "to punish [him] through unjust incarceration in a neighboring state." (Doc. No. 1, PageID# 4.) He further alleges that "[Nashville] Mayor John Cooper, [former Tennessee] Attorney General Herbert Slatery, and District Attorney Glen Funk <u>failed in their duty</u> to protect [Kalk's] civil rights . . . while also eroding the constitutional rights of all their constituents." (*Id.*) And he alleges that he provided Funk with an opportunity "to mitigate damages in this matter" by "withdraw[ing] the Petition for Extradition together with the Criminal Complaint" and apologizing to Kalk's children. (*Id.* at PageID# 12.)

"[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting

9

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)), *cert. denied*, 530 U.S. 1264 (2000)). Further, "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Kalk's conclusory allegations against Funk are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678. Kalk has not plausibly alleged that Funk "directly participated, encouraged, authorized, or acquiesced in the claimed retaliatory acts against" him. *Shehee*, 199 F.3d at 300. He therefore has not plausibly alleged that Funk deprived him of his constitutional rights, and his individual-capacity § 1983 claims against Funk must be dismissed.

## IV.    Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Funk's motion to dismiss Kalk's claims against him (Doc. No. 27) be GRANTED and that this action be DISMISSED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 3rd day of July, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge